UTICA MUTUAL INSURANCE COMPANY, Respondent, v. RIPON COOPERATIVE and another, Appellants. [Case No. 16.]

KALLIN and wife, Respondents, v. RIPON COOPERATIVE and another, Appellants. [Case No. 17.]

*Nos. 16, 17. Argued February 1, 1971.—Decided March 5, 1971.* (Also reported in 184 N. W. 2d 65.)

432

434

For the appellants there was a brief and oral argument by *Joseph D. Donohue* of Fond du Lac.

For the respondents there was a brief by *Thomas E. Hughes* of Oshkosh, and by *Hayes & Ritchay* of Ripon, and oral argument by *Mr. Hughes* and *Mr. William F. Hayes*.

HANLEY, J. Two issues are raised on this appeal:

(1) Did the trial court err in giving the *res ipsa loquitur* instruction; and

(2) Does the evidence support the apportionment of negligence?

### *The res ipsa loquitur instruction.*

The *res ipsa loquitur* instruction given by the trial court reads as follows:

". . . In addition thereto if you find that the defendant or its employees had exclusive control of the bulk feed truck involved in the fire, and if you further find that the fire claimed is of a type or kind that ordinarily would not have occurred had the defendant, or its employees, exercised ordinary care, then you may infer from the accident itself and the surrounding circumstances that there was negligence on the part of the defendant, or employees, unless the defendant has offered you an explanation of the fire which is satisfactory to you."

The appellants contend that the trial court erred in giving the *res ipsa loquitur* instruction. In this jurisdiction the following conditions must be present before

the doctrine of *res ipsa loquitur* is applicable: (1) The event in question must be of the kind which does not ordinarily occur in the absence of negligence; (2) the agency or instrumentality causing the harm must have been within the exclusive control of the defendant. *Turk v. H. C. Prange Co.* (1963), 18 Wis. 2d 547, 553, 119 N. W. 2d 365; *Welch v. Neisius* (1967), 35 Wis. 2d 682, 686, 151 N. W. 2d 735. When these two conditions are present, they give rise to a permissible inference of negligence which the jury is free to accept or reject. *Knief v. Sargent* (1968), 40 Wis. 2d 4, 6, 161 N. W. 2d 232.

In some cases it is clear from the nature of the event that the jurors, as laymen, are qualified on the basis of common human experience to decide whether the event is the kind which does not occur unless someone has been negligent. In *Welch v. Neisius, supra,* this court observed at page 687:

"In light of common experience, the court can fairly say that fertilizer bags such as those described in the evidence do not ordinarily fall from the stationary trailers in the absence of negligence on the part of someone. We conclude the first element of the doctrine of *res ipsa loquitur* appears satisfactorily from the evidence."

Also in this category are the medical malpractice cases where a sponge or other foreign object is discovered in the plaintiff's abdomen after surgery.

Often the event or instrumentality involved may be so complex or involve such sophisticated knowledge that the jurors are unable to determine on their own whether the result is one which does not ordinarily occur unless someone has been negligent. In such a case, the plaintiff may still obtain the benefit of *res ipsa loquitur* if he can produce competent expert testimony which serves in the place of the jurors' common knowledge and gives them a rational basis for concluding that the event does not

ordinarily occur unless someone has been negligent. *Fehrman v. Smirl* (1963), 20 Wis. 2d 1, 121 N. W. 2d 255, 122 N. W. 2d 439; *Shurpit v. Brah* (1966), 30 Wis. 2d 388, 141 N. W. 2d 266; *Knief v. Sargent, supra; Burnside v. Evangelical Deaconess Hospital* (1970), 46 Wis. 2d 519, 175 N. W. 2d 230.

In this case the mechanics of the instrumentality in question (an internal combustion engine) were not a matter which jurors could evaluate on the basis of their common knowledge. Moreover, this court has previously held that the mere occurrence of a fire does not give rise to a presumption, or even a permissible inference, of negligence. The court has also taken judicial notice of the fact that fires can and do occur without anyone being negligent. *Arledge v. Scherer Freight Lines, Inc.* (1955), 269 Wis. 142, 68 N. W. 2d 821. On this basis the appellants contend that expert testimony was necessary in this case before the doctrine of *res ipsa loquitur* could be applied.

The respondents here did put in some expert testimony, but appellants argue that the testimony in question was inadequate to establish a foundation for the giving of the *res ipsa loquitur* instruction. Appellants' attack on the adequacy of the respondents' expert's testimony is based primarily on the fact that the expert prefaced some of his conclusions with phrases such as "the most apparent" or "the most likely" cause of the fire. These answers were stricken, however, and the witness explained that much of his career had been investigating naval fires and testifying before boards of naval inquiry. He explained that in the context of those inquiries it was customary to state one's conclusions in terms of what was most apparent. In other words, his use of the objectionable phrases did not indicate that he was uncertain of his opinions; but such use merely arose from past habit. After correction by the trial court, the witness gave unequivocal testimony.

To determine if the doctrine of *res ipsa loquitur* was applicable in this case so as to entitle the plaintiffs to an instruction thereon requires a brief resumé of the evidence.

The respondents' expert witness was asked if he had an opinion to a reasonable degree of engineering certainty as to the cause of the fire. He gave a long, detailed answer as to what transpired after the original ignition without specifying the actual cause of the fire. The answer was objected to as not responsive and ordered stricken, and properly so.

Immediately after the nonresponsive answer, the witness went on to state unequivocally that the cause of the fire was a leakage of gasoline at the point where the fuel line entered the carburetor. The respondents' expert gave a very plausible basis for his conclusion as to the origin and cause of the fire. He explained that in order to have ignition, three elements—air, heat and fuel—must combine at one point. He noted that the other potential sources of fuel—oil, hydraulic fluid, etc.,—were all located in such a position that even if they leaked, they would not fall on a surface hot enough to cause ignition. By contrast, he pointed out that fuel leaking from the connection point between the fuel line and the carburetor would fall onto the extremely hot exhaust manifold located directly underneath, and ignition would occur here. He finally noted that his conclusion as to the point of origin was buttressed by the fact that the carburetor and the area around it were the most severely damaged and melted portions of the engine. Therefore, this must have been the area which experienced the most intense heat; and the point of greatest intensity of heat is normally the point of origin of the fire.

The expert witness also testified that proper maintenance and inspection, in his opinion, would have discovered the leak and prevented the fire. In addition to the testimony of their expert, the respondents also put in

some evidence on an alternative theory of causation. The respondents produced Florian Dolske, a member of the fire department, who testified that when he arrived on the scene, Klawitter, the driver of the truck, told him that the fire had been caused by an "overheated engine." Klawitter later denied the "overheated engine" remark.

When both parties have rested and the case is ready for the jury, either of two conditions may exist which would render it error to give the *res ipsa loquitur* instruction. The plaintiff may have proved too little or he may have proved too much. For example, if, on the one hand, there has been no evidence which would remove the causation question from the realm of conjecture and place it within the realm of reasonable inferences, then the plaintiff has proved too little, and the doctrine of *res ipsa loquitur* is of no avail, and the case must be dismissed.

On the other hand, it is possible that the plaintiff's evidence of negligence in a given case has been so substantial that it provides a full and complete explanation of the event, if the jury chooses to accept it. In that case, causation is no longer a mystery, and the *res ipsa loquitur* instruction would be superfluous and erroneous. *Fehrman v. Smirl* (1964), 25 Wis. 2d 645, 131 N. W. 2d 314; *Puls v. St. Vincent Hospital* (1967), 36 Wis. 2d 679, 154 N. W. 2d 308; and *Knief v. Sargent, supra.*

There is, of course, a middle ground between these two extremes where the giving of the instruction would be proper. Prosser describes that situation as follows:

". . . the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur." Prosser, *Law of Torts* (Hornbook Series) (3d ed.), ch. 6, p. 236, sec. 40.

We think it was error to give the *res ipsa loquitur* instruction in this case because of the evidence adduced. The respondents' expert offered an opinion on exactly where, how and why the fire occurred. The specific and detailed evidence of causation and negligence produced by the respondents placed them in the same circumstances as the plaintiff in *Knief v. Sargent, supra,* where the court noted at page 9:

"The trial court thought this conflicting evidence was sufficient to raise a jury question. We agree. While the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant but does not purport to furnish a complete and full explanation of the occurrence does not deprive the plaintiff of the benefit of *res ipsa loquitur;* here, there is more than some evidence. *There is direct evidence of specific acts of negligence complained of which furnish a complete and full explanation of what caused the injury to the plaintiff. Either the acts of the defendant were negligent or they were not.* There were no other probable causes. This evidence was sufficient to make a prima facie case and support a verdict. We think the plaintiff proved too much by direct evidence of negligence to be entitled to the *res ipsa loquitur* instruction. . . ." (Emphasis supplied.)

We conclude that it was reversible error to give the *res ipsa loquitur* instruction because the respondents' specific evidence, combined with the instruction, offered the jury too wide a range of grounds on which to base their verdict. The verdict should have been based on respondents' evidence of specific negligence and on that basis alone. The cause must be remanded for a new trial on the issue of negligence only because the findings as to damages are not challenged.

Since a new trial is ordered, we do not reach the issue of the propriety of the jury's apportionment of negligence.

*By the Court.*—Judgments reversed, and cause remanded for further proceedings consistent with this opinion.