David L. SIGLER and Patricia A. Sigler,
Plaintiffs-Appellants,

v.

Thomas L. KOBINSKY, Defendant,

CUNA MUTUAL INSURANCE SOCIETY,
Defendant-Respondent.

Court of Appeals

*No. 2008AP29. Submitted on briefs July 2, 2008.
—Decided November 6, 2008.*

2008 WI App 183

(Also reported in 762 N.W.2d 706.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *G. Brian Brophy* and *Rachel L. Govin* of *Sipsma, Hahn & Brophy, L.L.C.*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas R. Crone* and *Michael P. Gallagher* of *Melli, Walker, Pease & Ruhly, S.C.*, Madison.

Before Higginbotham, P.J, Dykman and Bridge, JJ.

¶ 1. DYKMAN, J. David and Patricia Sigler appeal from a summary judgment in favor of CUNA Mutual Insurance in their lawsuit alleging negligent supervision and training. The Siglers argue that CUNA had a duty to prevent its employees from using company computers to harass others because it was foreseeable that the failure to properly train or supervise their employees could cause harm to someone. We conclude

that the Siglers' complaint did not set forth any facts showing that it was foreseeable that CUNA's employees were likely to use company resources to cause an unreasonable risk of harm. Thus, the Siglers' complaint did not state a claim for negligent supervision. Were we to conclude that the Siglers' complaint alleged negligent supervision, we would conclude that summary judgment was appropriate based on public policy factors. Accordingly, we affirm.

## Background

¶ 2.   The following facts are undisputed. Thomas Kobinsky harassed the Siglers following an event where David Sigler yelled at Kobinsky for allowing his child to urinate in the Siglers' yard. Following the incident, Kobinsky anonymously placed public ads indicating that David Sigler had a business which he did not have, signed the Siglers up for various subscriptions and made commitments on their behalf. Law enforcement tracked the source of the harassment to CUNA, Kobinsky's employer, and identified Kobinsky as a suspect. Law enforcement officers went through Kobinsky's trash can and recycle bin at CUNA, and located mailings and products that were obviously ordered for the Siglers. Additionally, CUNA conducted an internal audit and discovered that Kobinsky used his company cell phone to call the Siglers' workplace and used his computer to conduct various searches for information relating to the Siglers.

¶ 3.   The Siglers sued Kobinsky and CUNA. Their claims against Kobinsky included intentional infliction of emotional distress and defamation.[1] Their claims against CUNA included negligence and negligent supervision.

---

[1] Kobinsky is not a party to this appeal.

¶ 4. CUNA moved for summary judgment, claiming it is immune from liability under the Federal Communications Decency Act and that the Siglers' negligence claims lacked merit. The Siglers opposed the summary judgment motion, arguing that the federal act did not apply and that CUNA had negligently supervised Kobinsky because, in spite of recognizing the potential for harm, CUNA inadequately trained and supervised Kobinsky regarding its technology resources policies and did nothing to enforce these policies. The Siglers argued that because CUNA disciplined fourteen of its employees in 2003 for internet technology related offenses, CUNA was aware of a foreseeable risk with respect to employee misuse of technology resources. Furthermore, the Siglers pointed to the lower evaluations in Kobinsky's employment reviews in 2003 and suggested that this should have alerted CUNA to a problem. The Siglers argued that CUNA should have done regular monitoring and should have reviewed individual employee hits on internet websites to prevent employees from using their company computers to cause harm. The trial court concluded that the federal act was inapplicable, but that CUNA was entitled to summary judgment because it did not owe a duty of care since an unreasonable risk of harm was unforeseeable. The Siglers appeal.

*Standard of Review*

¶ 5. We review a grant or denial of summary judgment de novo, and we use the same methodology as did the trial court. *Cole v. Hubanks,* 2004 WI 74, ¶ 5, 272 Wis. 2d 539, 681 N.W.2d 147. This methodology requires a court to determine whether a claim has been

stated, and then if a factual issue has been presented. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

¶ 6.   Summary judgment methodology is a four-step process. *See Marshall v. Miles*, 54 Wis. 2d 155, 160–61, 194 N.W.2d 630 (1972). We first examine the complaint and determine whether it states a cause of action. *Id.* at 160. Next, we examine all of the pleadings to determine whether material issues of fact are presented. *Id.* If a cause of action has been stated and material factual issues exist, we then examine the moving party's affidavits and other proof to determine whether a prima facie showing for summary judgment has been established. *Id.*

> If the moving party has made a prima facie case for summary judgment, an examination is then made of the opposing party's . . . affidavit and other proof to determine whether there exist[] disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial.

*Id.* at 160–61.

¶ 7.   Only if a complaint states a claim does the court "determine whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate a genuine issue as to any material fact." *C.L. v. Olson*, 143 Wis. 2d 701, 706, 422 N.W.2d 614 (1988). Whether Wisconsin courts recognize a claimed duty and how far the scope of such a duty extends are questions of law determined judicially. *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶ 23 n.12, 291 Wis. 2d 283, 717 N.W.2d 17. "Whether public policy considerations preclude liability is a question of law,"

which may be properly decided on summary judgment. *Nichols v. Progressive N. Ins. Co.*, 2008 WI 20, ¶ 21, 308 Wis. 2d 17, 746 N.W.2d 220 (citation omitted).

### Discussion

¶ 8.   The Siglers argue that (1) they have stated a claim for negligent supervision, (2) public policy should not limit CUNA's liability and (3) material facts are in dispute. We begin summary judgment methodology with an analysis of whether the Siglers' complaint sufficiently alleged the four elements of a negligent supervision action.

¶ 9.   To state a claim for negligent supervision, the Siglers must allege (1) the existence of a duty of care on the part of CUNA, (2) a breach of that duty of care, (3) a wrongful act of Kobinsky that was a cause of their injury, and (4) an act or omission of CUNA that was a cause of Kobinsky's wrongful act.[2] *See Doe 1 v. Archdiocese of Milwaukee*, 2007 WI 95, ¶ 16, 303 Wis. 2d 34, 734 N.W.2d 827. We conclude that the Siglers' complaint has not alleged a duty of care, and thus has not stated a claim for negligence.[3]

---

[2] The Siglers' complaint also alleged a claim for ordinary negligence, but they do not raise this claim on appeal.

[3] While liability in the majority of negligence cases in Wisconsin is guided by considerations of public policy factors, liability can be limited in a negligence case based on the absence of a duty. *Nichols v. Progressive N. Ins. Co.*, 2008 WI 20, ¶ 47, 308 Wis. 2d 17, 746 N.W.2d 220.

Because the Siglers failed to state a claim for negligence, we do not address whether any material facts remain. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

¶ 10. Under Wisconsin law, "[e]very person has a duty to use ordinary care in all of his or her activities, and a person is negligent when that person fails to exercise ordinary care." *Alvarado v. Sersch*, 2003 WI 55, ¶ 14, 262 Wis. 2d 74, 662 N.W.2d 350. "[A] duty to use ordinary care is established whenever it is foreseeable that a person's act or failure to act might cause harm to some other person." *Id.* "The mere possibility of harm is insufficient to establish negligence." *University Dodge, Inc. v. Drott Tractor Co., Inc.*, 55 Wis. 2d 396, 399, 198 N.W.2d 621 (1972) (citation omitted). The duty to act or refrain from acting in a particular case "arises from probabilities, rather than from bare possibilities of injury. Failure to guard against the bare possibility of injury is not actionable negligence." *Grube v. Moths*, 56 Wis. 2d 424, 433, 202 N.W.2d 261 (1972). "The notice pleading rule, while intended to eliminate many technical requirements of pleading, nevertheless requires the plaintiff to set forth a statement of circumstances, occurrences and events in support of the claim presented." *Doe 67C v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 36, 284 Wis. 2d 307, 700 N.W.2d 180 (citation omitted). "A bare conclusion does not fulfill a plaintiff's duty of stating the elements of a claim in general terms." *Id.* (citation omitted). Thus, to allege a duty of care, the Siglers' complaint was required to state general facts showing that CUNA should have foreseen that some injury was probable when it failed to monitor its employees' use of technology resources. *See Nichols,* 308 Wis. 2d 17, ¶ 13.

¶ 11. We begin with the first step in the summary judgment methodology, an examination of the Siglers' complaint. In their complaint, the Siglers allege that

CUNA had a duty to manage and control Kobinsky's work activities. However, the Siglers' complaint only alleged that CUNA provided Kobinsky with access to a computer and the internet, and that company policies prohibited personal use of computer resources. Because it was not reasonably foreseeable that permitting employees to have unsupervised access to the internet would probably result in harm to some person or some thing, the Siglers have failed to allege facts showing that CUNA had a duty of care. Therefore, the Siglers failed to state a negligent supervision claim.

¶ 12. Even if the Siglers had properly stated a negligent supervision claim, we conclude that public policy factors preclude liability. "This analysis may be performed without a full factual resolution of the cause of action by trial." *Nichols*, 308 Wis. 2d 17 (citation omitted). Although we generally refrain from a public policy consideration of liability until after a trial of the facts, since the facts presented are simple to ascertain and the public policy questions have been fully presented, we proceed with our analysis. *See Hornback v. Archdiocese of Milwaukee*, 2008 WI 98, ¶ 51, 313 Wis. 2d 294, 752 N.W.2d 862. We consider whether: (1) "the injury is too remote from the negligence," (2) "the injury is too wholly out of proportion to the tortfeasor's culpability," (3) "in retrospect it appears too highly extraordinary that the negligence should have brought about the harm," (4) "allowing recovery would place too unreasonable a burden upon the tortfeasor," (5) "allowing recovery would be too likely to open the way to fraudulent claims," and (6) "allowing recovery would have no sensible or just stopping point." *Nichols*, 308 Wis. 2d 17, ¶¶ 22–27 (citations omitted). "If one or

more of the public policy factors so dictates, the court may refuse to impose liability in a case." *Id.*, ¶ 21 (citation omitted).

¶ 13.    Had the Siglers' complaint stated a negligent supervision claim, we would conclude that CUNA would not be liable as a matter of public policy based on the first and sixth policy factors. First, the injuries in this case are too remote from the negligence to allow recovery. The actions of Kobinsky were bizarre and unexpected. CUNA had no relationship with the Siglers and all the information Kobinsky obtained was found on public websites. While the Siglers suffered harm as a result of Kobinsky's actions, Kobinsky could have obtained the personal identification information about the Siglers with or without the use of CUNA's computer. Also, recovery will enter a field with no sensible or just stopping point. CUNA already had computer usage policies which it communicated to employees. Employees were required to review and certify that they read and complied with these policies. Were we to allow the Siglers' claim to proceed, this expansion of liability would be limitless and turn employers into guarantors or insurers.

*By the Court.*—Order affirmed.